## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:25-cv-02712-DDD-SBP

JOHN DOE,

      Petitioner,

v.

PAM BONDI, U.S. Attorney General;
SIRCE E. OWEN, Director, Executive Office for Immigration Review;
KRISTI NOEM, Secretary, U.S. Department of Homeland Security;
TODD M. LYONS, Director, U.S. Immigration and Customs
    Enforcement;
ROBERT GUADIAN, Denver Field Office Director, U.S. Immigration
    and Customs Enforcement; and
DAWN CEJA, Warden of Denver Contract Detention Facility,

      Respondents.

---

## ORDER DENYING MOTION
## FOR PRELIMINARY INJUNCTION

---

Petitioner John Doe moves for a preliminary injunction directing his immediate release from immigration detention, or in the alternative, an individualized bond hearing before this Court or another neutral adjudicator. Doc. 5. The petitioner has been subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) for approximately ten months. Because the relevant facts are not in dispute, I have determined that a hearing on his motion is not necessary. Doc. 21. For the following reasons, the petitioner's motion is denied.

# BACKGROUND[1]

The petitioner is a twenty-five-year-old native and citizen of Nicaragua. Doc. 1 at 2; Doc. 1-1 at 2, 6; Doc. 13-1 at 2. One of his parents is a former high-ranking official in the Nicaraguan government. Doc. 1-1 at 6. After his parent left the government, the petitioner and his family were placed under house arrest and surveillance in Nicaragua, and his parents were "kidnapped, disappeared, and tortured." *Id.* The petitioner fled to the United States to seek asylum, and the Nicaraguan government has continued to pursue and target his family. *Id.* He fears that if he returns to Nicaragua, he will be arrested, tortured, and possibly killed. *Id.* at 9.

On January 7, 2025, the petitioner arrived at the San Ysidro Port of Entry and applied for admission to the United States, asserting a fear of persecution if he returned to Nicaragua. Doc. 1-1 at 2, 6; Doc. 13-1 at 2. He was detained pending a determination of his credible-fear claim and housed at an Immigration and Customs Enforcement detention center in San Diego, California. Doc. 1-1 at 2; Doc. 13-1 at 2. On January 24, the petitioner appeared before U.S. Citizenship and Immigration Services for a credible-fear interview. Doc. 13-1 at 2. The petitioner's attorney had not been given advance notice of the interview and requested that it be rescheduled, and that request was granted. *Id.*; Doc. 17 at 2. On February 4, the petitioner appeared for the rescheduled interview, and Citizenship and Immigration Services determined that, pursuant to

---

1    In this Order, all pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

8 C.F.R. § 208.35(a), he is ineligible for asylum,[2] but pursuant to 8 C.F.R. § 208.35(b)(1)(i) and (b)(2)(i), he had established a "reasonable probability of persecution." Doc. 13-1 at 2-3; Doc. 1-1 at 2-3, 12-14.

Citizenship and Immigration Services issued a Notice to Appear charging the petitioner with inadmissibility to the United States, initiating removal proceedings under the Immigration and Nationality Act. Doc. 1-1 at 3, 16-17; Doc. 13-1 at 3. On February 20, the petitioner appeared before an Immigration Judge in San Diego for his initial hearing, at which he admitted the allegations and charge of inadmissibility in the Notice to Appear. Doc. 13-1 at 3; Doc. 1-1 at 3. The Immigration Judge set the case for another hearing on March 27. Doc. 13-1 at 3; Doc. 1-1 at 3. On February 23, ICE transferred the petitioner to a detention center in Denver, Colorado, and on March 6, the Department of Homeland Security filed a motion for change of venue. Doc. 13-1 at 3; Doc. 1-1 at 3. The petitioner opposed the change of venue, but on March 17, the Immigration Judge granted DHS's motion. Doc. 13-1 at 3; Doc. 1-1 at 3, 19-26.

On March 28, the petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, and on March 31, an Immigration Judge scheduled his case for an individual merits hearing on August 19. Doc. 13-1 at 3-4; Doc. 1-1 at 3; Doc. 1 at 7. On May 28, the petitioner filed a motion to advance his hearing date, and the hearing was advanced to a two-hour time slot on July 11. Doc. 1-1 at 3-4, 28-32; Doc. 13-1 at 4. On July 11, the Immigration Judge heard testimony in the petitioner's case but did not conclude

---

[2]    The petitioner contends that this determination was erroneous, and notes that in May 2025, the limitation on asylum in Section 208.35(a) was vacated by court order. Doc. 1 at 12 n.3 (citing *Las Americas Immigrant Advoc. Ctr. v. DHS*, 783 F. Supp. 3d 200 (D.D.C. 2025), *appeal filed*, No. 25-5313 (D.C. Cir. Aug. 28, 2025)); Doc. 5 at 6 n.4 (citing same).

the hearing due to the two-hour time constraint, and the case was re-
scheduled for a further one-hour hearing on August 8. Doc. 1-1 at 4;
Doc. 13-1 at 4. On August 8, the continued hearing was held but again
was not completed due to the one-hour time constraint, and the case was
rescheduled for a further hearing on August 27. Doc. 1-1 at 4; Doc. 13-1
at 4. On August 27, the second continued hearing was held but again
was not completed due to delays and time constraints, and the case was
rescheduled for a further hearing on September 22.[3] Doc. 1-1 at 4, 34;
Doc. 13-1 at 4; Doc. 1 at 14.

The petitioner has been detained since January 2025, and he re-
mains detained at the Denver ICE detention center. He suffers from
post-traumatic stress disorder, major depressive disorder, and general-
ized anxiety disorder as a result of childhood sexual abuse and the per-
secution of his family by the Nicaraguan government, and he states that
his health has worsened due to the conditions of confinement and inad-
equate medical care at the detention center. Doc. 1-1 at 6-9. He reports
that:

> The day-to-day conditions of the facility are . . . bad. We are
> only permitted to go outside and see the sun approximately
> two times per week. It is difficult to do any exercise in order
> to distract myself and help improve my mental health. Hy-
> giene and ventilation in the facility is very poor, and the
> air conditioning quality is not the best . . . . I have had to
> request a change in my unit due to the level of noise from

---

[3]    The parties have not updated the Court as to the outcome of the Sep-
tember 22 hearing. The Executive Office for Immigration Review's Au-
tomated Case Information system indicates that on October 16 the Im-
migration Judge issued an order of removal, but it does not indicate
whether asylum, withholding of removal, or Convention Against Torture
protection was granted. *See* Dep't of Just. Exec. Office for Immigr. Rev.,
*Automated Case Information*, https://acis.eoir.justice.gov/en (last visited
Nov. 4, 2025) (allowing search by A-number). Any appeal to the Board
of Immigration Appeals is due by November 17. *See id.*

other inmates until 3:00 a.m. every night, which worsens
my PTSD and anxiety . . . .

. . . The officials can be very abusive and are not responsive
when I have raised issues. There are frequently no staff
members available to even discuss problems with, and the
facility does not respond to grievances . . . . I have observed
that, when detainees do raise complaints, they are retali-
ated against by the officials and often forced to change
units. I therefore am hesitant to even raise a complaint, as
I am worried about retaliation both from other inmates and
from officials at the facility.

*Id.* at 7-8.

The petitioner alleges, "[o]n information and belief," that pursuant
to executive orders directing ICE to detain noncitizens "to the maximum
extent authorized by law," "DHS has effectively ceased granting parole
to arriving aliens as a result of a directive issued in February 2025 that
the Director of ICE must personally sign off on any release of a detainee
from ICE custody." Doc. 1 at 4, 10, 16; *see also* Doc. 5 at 3, 9, 13.

On August 29, the petitioner filed a habeas petition in this Court,
Doc. 1, along with a motion to preliminarily enjoin the respondents from
continuing to detain him without a bond hearing while his case proceeds
in immigration court, Doc. 5. His habeas petition alleges violations of
his Fifth Amendment rights to procedural and substantive due process.
Doc. 1 at 30-31. He also moves for leave to proceed under a pseudonym
due to the risk that public disclosure of his name could result in the
Nicaraguan government harming him (if he is ultimately removed) or
his family members who remain under surveillance in Nicaragua.
Doc. 2.

## LEGAL STANDARDS

### I.  Preliminary Injunction

"A preliminary injunction is an extraordinary remedy, the exception
rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941

F.3d 1221, 1232 (10th Cir. 2019). One may be granted "only when the movant's right to relief is clear and unequivocal." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018). To succeed on his motion for a preliminary injunction, the petitioner must show: (1) that he is "substantially likely to succeed on the merits"; (2) that he will "suffer irreparable injury" if the injunction is denied; (3) that his "threatened injury" without the injunction outweighs the defendants' under the injunction; and (4) that the injunction is not "adverse to the public interest." *Mrs. Fields*, 941 F.3d at 1232; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth preliminary-injunction factors "merge" where, as here, the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In addition, because the injunction the petitioner seeks is of a "disfavored" type—it would mandate action (rather than prohibiting it) and change the status quo—he faces a heavier burden and must make a "strong showing" that the first and third factors weigh in his favor. *Mrs. Fields*, 941 F.3d at 1232.

## II.  Habeas Corpus

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear constitutional challenges brought by noncitizens who are detained pursuant to the federal immigration statutes. *See Demore v. Kim*, 538

U.S. 510, 516-17 (2003); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

## DISCUSSION

### I. Motion for Preliminary Injunction

#### A. Legal Framework Governing Immigration Detention

While removal proceedings are being adjudicated, a noncitizen may be detained pursuant to 8 U.S.C. § 1225 or 1226. The former applies to "applicants for admission" like the petitioner "who arrive[] in the United States," and the latter applies to aliens who have been physically present in the United States continuously for at least two years. *See* 8 U.S.C. § 1225(a)(1), (b)(1)(A)(iii); *Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018); *DHS v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020). Under Section 1225(b)(1), if an inadmissible "arriving alien" establishes a credible fear of persecution, "the alien shall be detained for further consideration of [an] application for asylum," unless the alien is "paroled." 8 U.S.C. § 1225(b)(1)(B)(ii); *accord Jennings*, 583 U.S. at 287-89; *Marczak v. Greene*, 971 F.2d 510, 513 (10th Cir. 1992). Parole is governed by 8 U.S.C. § 1182(d)(5), which authorizes the Secretary of Homeland Security, "in his discretion," to parole noncitizens applying for admission to the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See also* 8 C.F.R. § 212.5. If an alien applying for asylum has not been paroled, "detention must continue until immigration officers have finished considering the application for asylum, or until removal proceedings have concluded." *Jennings*, 583 U.S. at 299 (cleaned up).

If an order of removal is issued and becomes final, the government may detain an alien pursuant to 8 U.S.C. § 1231 while it attempts to effectuate the alien's removal, but this detention may not be indefinite.

*See* 8 U.S.C. § 1231; 8 C.F.R. § 241.4; *Zadvydas v. Davis*, 533 U.S. 678 (2001). Section 1231 does not yet apply in the petitioner's case because he is not yet subject to a final order of removal. *See supra* note 3; 8 U.S.C. § 1231(a)(1)(B).

Both sides agree that the petitioner is currently detained pursuant to Section 1225(b)(1). Doc. 1 at 16; Doc. 13 at 2, 4. The petitioner contends that continued mandatory detention without a bond hearing under that statute, as applied in his case, violates his rights to procedural and substantive due process.

## B. Procedural Due Process

### 1.

Inadmissible arriving aliens like the petitioner do not have a cognizable liberty interest in being released on parole as a matter of procedural due process. *Sierra*, 258 F.3d at 1218 & n.3 (petitioner was "legally considered to be detained at the border and hence as never having effected entry into this country" (citing *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1440 (5th Cir. 1993), *amended by* 997 F.2d 1122 (5th Cir. 1993)));[4] *accord Zadvydas*, 533 U.S. at 692-94 (recognizing "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered" and noting that "[i]t is well established that certain constitutional protections . . . are unavailable" to the latter (discussing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953))); *see also Thuraissigiam*, 591 U.S. at 107, 138-40. "Ordinarily, then, '[w]hat-

---

[4]    The *Sierra* court used the term "excludable alien" rather than "inadmissible arriving alien" or "applicant for admission," consistent with the statutory designations that existed at the time the petitioner in that case came to the United States. 258 F.3d at 1215 n.1, 1216 n.2; *see also Chi Thon Ngo v. INS*, 192 F.3d 390, 393-94 & n.4 (3d Cir. 1999) (explaining terminology changes in 1996 amendments to Immigration and Naturalization Act).

ever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Sierra*, 258 F.3d at 1218 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). This does not mean that an inadmissible arriving alien has no due-process rights, but "rather, the applicable statutory process shapes [his] procedural due-process rights." *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020).

In *Zadvydas*, the Supreme Court held that, for "aliens who were admitted to the United States but subsequently ordered removed," Section 1231(a)(6) contains an implicit "reasonable time" limitation on detention—an alien may be detained beyond the ninety-day "removal period" only for such time as is reasonably necessary to secure the alien's removal, and detention may not continue if removal is "no longer practically attainable." 533 U.S. at 682, 690, 699. The Court read that implicit limitation into Section 1231 under the canon of constitutional avoidance because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id.* at 682, 689-90, and "post-removal-period detention, *unlike detention pending a determination of removability* . . . has no obvious termination point," *id.* at 697 (emphasis added). The Court also noted that the question presented in that case dealt with aliens who had effected entry into the United States, and that "[a]liens who have not yet gained initial admission to this country would present a very different question."[5] *Id.* at 682, 692-94.

---

[5]    In *Clark v. Martinez*, the Supreme Court clarified that the "reasonable time" limitation recognized in *Zadvydas* also applies to inadmissible arriving aliens who become subject to a final order of removal and are then detained under Section 1231, even though "the constitutional concerns that influenced our statutory construction in *Zadvydas* are not present for aliens . . . who have not been admitted to the United States." 543 U.S. 371, 377-86 (2005). The Court reasoned that the same statutory

In *Jennings*, the Supreme Court addressed detention pending a determination of removability and held that, unlike Section 1231, Section 1225(b) does *not* impose an implicit statutory limitation on the permissible length of detention while removal proceedings are ongoing. 583 U.S. 281. Nor does the statute implicitly give detained aliens the right to periodic bond hearings during the course of their detention. *Id.* The Court again pointed out that detention under Section 1225(b) has a definite termination point—the conclusion of removal proceedings—where "[b]y contrast, Congress left the permissible length of detention under § 1231(a)(6) unclear." *Id.* at 299. Because Section 1225(b) "mandate[s] detention until a certain point and authorize[s] release prior to that point only under limited circumstances," it cannot reasonably be read to impose a limit on the length of detention prior to the conclusion of removal proceedings. *Id.* at 297-303. The Court in *Jennings* did not address the constitutional question of whether the Due Process Clause imposes some constraint on the length of mandatory detention under Section 1225(b), but it did note that certain aliens—namely, those who have not effected entry into the United States—"may not be entitled to [relief] as a constitutional matter." *Id.* at 312-13 (citing *Mezei*, 345 U.S. 206).

Since *Jennings*, courts have "sharply disagree[d] about the reach of the Due Process Clause as applied to arriving aliens." *Gonzalez Aguilar*, 448 F. Supp. 3d at 1212. "[T]he Supreme Court has not addressed the viability of constitutional due process challenges to the length of mandatory immigration detention" under Section 1225(b) or Section 1226(c), "the circuits are split on the issue," and district courts "have also reached disparate conclusions." *Alves v. DOJ*, No. EP-25-CV-306-KC, 2025

---

text must be given the same meaning in all cases, even if the constitutional problems that dictated the construction in *Zadvydas* only pertain to a subset of the aliens who may be detained under the statute. *Id.*

WL 2629763, at *3 to *4 (W.D. Tex. Sept. 12, 2025); *see also Black v. Almodovar*, — F.4th —, Nos. 20-3223, 22-70, 2025 WL 2989687, at *2 to *3 (2d Cir. Oct. 24, 2025) (Nardini, J., dissenting from denial of rehearing en banc) (describing the "intercircuit incoherence" regarding what process is due aliens subject to mandatory detention during removal proceedings as "more than the usual circuit split," and concluding the "all-over-the-map holdings" are "a circuit splat" that "only the Supreme Court can clean up"). Some courts have held that, at some point, due process requires a noncitizen subject to prolonged detention under Section 1225(b) be given an individualized bond hearing before an immigration judge, or some other form of individualized review of eligibility for release beyond the opportunity to request discretionary parole under Section 1182(d)(5). *E.g.*, *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 848-51 & n.12 (E.D. Va. 2020); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772-73 (S.D. Cal. 2020); *Clerveaux v. Searls*, 397 F. Supp. 3d 299, 309-22 (W.D.N.Y. 2019); *Abdul-Samed v. Warden of the Golden State Annex Det. Facility*, No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *5 to *8 (E.D. Cal. July 25, 2025); *Arechiga v. Archambeault*, No. 2:23-cv-00600-CDS-VCF, 2023 WL 5207589, at *2 to *4 (D. Nev. Aug. 11, 2023).[6] But other courts have held that due process imposes no time limit or hearing requirement when an alien is subject to mandatory detention under Section 1225(b) while removal proceedings are pending. *E.g.*, *Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 675-79 (S.D. Tex. 2021); *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 694 (E.D. Va. 2020); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647-50 (S.D.N.Y.

---

[6]   One such decision that the petitioner cites in support of his arguments has been abrogated. *See* Doc. 1 at 22 (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019), *abrogated by Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024)); Doc. 5 at 17 (citing same).

2018); *Leon Alcazar v. Cantu*, No. CV-24-03342-PHX-JAT (DMF), 2025
WL 2548698, at *14 (D. Ariz. June 5, 2025) (R. & R.), *adopted by* 2025
WL 2304357 (D. Ariz. Aug. 11, 2025); *Bonilla Espinoza v. Ceja*, No. 1:25-
cv-01120-GPG, slip op. at 12-19 (D. Colo. May 21, 2025).[7]

The Tenth Circuit has not addressed this issue. But I agree with the
persuasive authorities reasoning that, in light of *Jennings* and the
Tenth Circuit's treatment of *Mezei* in pre-*Jennings* cases, procedural
due process does not afford inadmissible arriving aliens subject to

---

[7]    *See also Mwangi v. Terry*, 465 F. App'x 784, 787-88 (10th Cir. 2012)
(detention was not indefinite and removal remained reasonably foresee-
able for alien detained under Section 1226(a) for over three years during
pendency of removal proceedings; "Although a precise end-date to his
removal cannot be pinpointed, that is because his removal proceedings
continue, not because the government cannot remove him."); *Banyee*,
115 F.4th at 931-34 (applicable Supreme Court authorities set forth "a
bright-line rule" that "the government can detain an alien [under Sec-
tion 1226(c)] for as long as deportation proceedings are still 'pending'"
(emphasis omitted)); *Black*, 2025 WL 2989687, at *9 to *11, *15
(Menashi, J., dissenting from denial of rehearing en banc) ("The Eighth
Circuit [in *Banyee*] has the better reading of the [Supreme Court] case
law . . . ."); *Wekesa v. U.S. Att'y*, No. 22-10260, 2022 WL 17175818, at *1
(5th Cir. Nov. 22, 2022) (due process did not require individualized bond
hearing where petitioner was subject to mandatory detention under Sec-
tion 1226(c)); *Utoliti v. Ceja*, No. 25-cv-00418-GPG-CYC, 2025
WL 2418598, at *5 (D. Colo. May 29, 2025) (detention under Sec-
tion 1226(c) comported with due process where "removal proceedings are
ongoing, and Petitioner does not allege that Respondents have engaged
in any dilatory conduct that has delayed these proceedings"); *Aguayo v.
Martinez*, No. 1:20-cv-00825-DDD-KMT, 2020 WL 2395638, at *4
(D. Colo. May 12, 2020) ("'detention during removal proceedings'—even
longer-than-average detention—'is a constitutionally permissible part of
that process' so long as there is no evidence that the government is[]
improperly or arbitrarily delaying" proceedings (quoting *Demore*, 538
U.S. at 531)); *Keo v. Warden of the Mesa Verde Ice Processing Ctr.*,
No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, at *5 to *8 (E.D. Cal.
Apr. 7, 2025) (following *Banyee*; *Rimtobaye v. Castro*, No. SA-23-CV-
1529-FB (HJB), 2024 WL 5375786, at *2 to *3 (W.D. Tex. Oct. 29, 2024)
(R. & R.) (same), *adopted by* 2025 WL 377722 (W.D. Tex. Jan. 31, 2025).

prolonged detention a right to release or a bond hearing prior to the con-
clusion of removal proceedings.[8] *See Gonzalez Aguilar*, 448 F. Supp. 3d
at 1205-12; *de la Rosa Espinoza v. Guadian*, No. 20-3126-JWL, 2020
WL 3452967, at *5 to *8 (D. Kan. June 24, 2020); *Bonilla Espinoza*, slip
op. at 12-19. "[T]he Tenth Circuit has issued rulings addressing the *Me-
zei* principle, the most recent of which [*Sierra*] suggests *Mezei* still ap-
plies to procedural due process challenges within [this] Circuit," and
"[t]here is no indication that the Tenth Circuit has overruled this prece-
dent or limited it in a material way." *Bonilla Espinoza*, slip op. at 15-16.
*Mezei* and *Sierra* "compel[] the Court to conclude that Petitioner, as an
applicant for admission, is entitled only to the process Congress has con-
ferred on him by statute." *Id.* at 17. And under *Jennings*, the procedures

---

[8]    The petitioner asserts that "[t]he recognition that six months is a
substantial period of confinement" after which "additional process is re-
quired to support continued incarceration" is "deeply rooted in our legal
tradition." Doc. 1 at 22 (citing, *e.g.*, *Duncan v. Louisiana*, 391 U.S. 145,
161 (1968) ("[I]n the late 18th century in America crimes triable without
a jury were for the most part punishable by no more than a six-month
prison term . . . .")); Doc. 5 at 16 (citing same); *see also Dobbs v. Jackson
Women's Health Org.*, 597 U.S. 215, 231 (2022) (to receive implicit con-
stitutional protection, a right "must be 'deeply rooted in this Nation's
history and tradition'"). But the three cases the petitioner cites for this
proposition all involved involuntary detention of persons already in the
United States; none speaks to the original understanding of how the Due
Process Clause would apply in the context of this case, *i.e.*, to an inad-
missible arriving alien who "has the keys in his pocket" and can end his
detention immediately by voluntarily returning to his home country.
*Banyee*, 115 F.4th at 933 (quoting *Parra v. Perryman*, 172 F.3d 954, 958
(7th Cir. 1999)); *see Thuraissigiam*, 591 U.S. at 123-24 (U.S. and Eng-
land "had nothing like modern immigration restrictions" in late 1700s
and early 1800s); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001) (first statute
regulating immigration enacted in 1875); *Nishimura Ekiu v. United
States*, 142 U.S. 651, 660 (1892) (as to "foreigners who have never been
naturalized, nor acquired any domicile or residence within the United
States, nor even been admitted into the country pursuant to law," "the
decisions of executive or administrative officers, acting within powers
expressly conferred by Congress, are due process of law").

authorized by Section 1225(b) do not provide for bond hearings or place a time limit on detention while removal proceedings are pending. *Gonzalez Aguilar*, 448 F. Supp. 3d at 1205-12; *de la Rosa Espinoza*, 2020 WL 3452967, at *5 to *8; *Bonilla Espinoza*, slip op. at 12-19.[9] The petitioner here "does not and cannot argue that he is not receiving the process Congress has established for detainees in his circumstances," *Bonilla Espinoza*, slip op. at 17, as that process dictates that he be detained unless he is admitted or paroled, 8 U.S.C. § 1225(b)(1).

**2.**

The petitioner acknowledges that he has not made a request for parole under 8 U.S.C. § 1182(d)(5), *see* Doc. 1 at 10; Doc. 5 at 12-13, so to the extent his claim is premised on the fact that he has not been granted parole, he has not exhausted his available administrative remedies. Exhaustion is generally a prerequisite to habeas relief, *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010), because "the agency is in a superior position to investigate the facts," *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986). Exhaustion also "might result in satisfactory resolution of the issue, thereby obviating the need for judicial intervention." *Rodriguez v. Wiley*, No. 05-cv-02616-MSK-CBS, 2007 WL 496693, at *2 (D. Colo. Feb. 13, 2007). "[A]t a minimum, it will develop the factual record at the agency level, preserving necessary evidence and reducing the burdens on the courts." *Id.*

---

[9]     *Accord Petgrave*, 529 F. Supp. 3d at 675-79; *Aslanturk*, 459 F. Supp. 3d at 694; *Poonjani*, 319 F. Supp. 3d at 647-50; *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 332-36 (W.D.N.Y. 2021) (discussing *Thuraissigiam*, 591 U.S. 103); *Aracely R. v. Nielsen*, 319 F. Supp. 3d 110, 142-45 (D.D.C. 2018); *Leon Alcazar*, 2025 WL 2548698, at *14.

Though the petitioner argues that exhaustion would be futile,[10] *see* Doc. 1 at 9-11; Doc. 5 at 12-14, the futility exception to the exhaustion requirement is generally "quite narrow," *Holman v. Booker*, 166 F.3d 347, 1998 WL 864018, at *3 (10th Cir. 1998) (unpublished table decision). Courts are especially reluctant to find futility with respect to matters that are committed to agency discretion, *Wiley*, 2007 WL 496693, at *2, like parole is in these circumstances, 8 U.S.C. § 1182(d)(5). The petitioner asserts that parole is "functionally unavailable" because "the process for requesting parole from ICE is inadequate and currently nonexistent in light of the Trump administration's executive orders," but the only support he provides for that assertion is a single news article. *See* Doc. 1 at 4 & n.2, 10, 16 (citing Adam Shaw, *Trump's ICE Limits Illegal Immigrant Releases Amid Moves to Shake off Biden "Hangover"*, *Fox News*, (Feb. 6, 2025), https://iptp-production. s3.amazonaws.com/media/documents/2025.02.06_Trumps_ICE_limits_ illegal_immigrant_releases___Fox_News.pdf); Doc. 5 at 3 & n.3, 9, 13 (citing same). I cannot say on that evidence that a parole request would be futile. *See Holman*, 1998 WL 864018, at *4 (habeas allegations must be factually supported). Habeas review of a parole decision in this context "is limited to determining whether . . . officials 'have articulated *some* individualized facially legitimate and bona fide reason for denying parole, and *some* factual basis for that decision in each individual case.'" *Sierra*, 258 F.3d at 1219 (quoting *Marczak*, 971 F.2d at 518). I cannot

---

[10]  The petitioner also argues that exhaustion should be excused because his continued detention is causing irreparable harm to his physical and mental health due to a lack of adequate care at the detention facility. Doc. 1 at 9, 11; Doc. 5 at 13-14. But as explained below, *see infra* note **Error! Bookmark not defined.**, release is not the appropriate remedy for unconstitutional conditions of confinement.

conduct such a review when no parole request has been made.[11] "[B]y failing to file an application for or even request parole, Petitioner has failed to exhaust his administrative remedies." *Traore v. Decker*, No. 19-cv-4612 (ALC), 2019 WL 3890227, at *4 (S.D.N.Y. Aug. 19, 2019).[12]

---

[11]  I also note that in the event the petitioner were denied process with respect to a parole request, the appropriate remedy would not be release or a bond hearing before this Court, but rather to remand the case to ICE to make an individualized parole determination in accordance with the required procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (remanding for Board of Immigration Appeals to "exercise its own independent discretion, after a fair hearing," as regulations required); *Castillo-Hernandez v. Longshore*, 6 F. Supp. 3d 1198, 1208-11 (D. Colo. 2013) ("Rather than a remedy to accord immediate release for a detainee, in the immigration context, habeas is often a vehicle used to afford an immigrant access to consideration for discretionary relief."); *Aracely*, 319 F. Supp. 3d at 141-45, 149-54 157-58 (D.D.C. 2018) (ordering ICE "to re-evaluate . . . parole in strict compliance with [ICE Directive 11002.1], including its procedural requirements"); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 324-25, 337, 342-43 (D.D.C. 2018) (ordering ICE to follow procedures mandated by ICE Directive 11002.1).

[12]  *Cf. Boumediene v. Bush*, 553 U.S. 723, 794-95 (2008) (exhaustion excused where detainees had requested administrative review but were still awaiting decision after two years); *Verner v. Reno*, 166 F.3d 350, 1998 WL 792059, at *2 (10th Cir. 1998) (unpublished table decision) ("[U]ntil the appeals board has been given an opportunity to act, [Petitioner] has not exhausted his administrative remedies."); *Quintana Casillas v. Session*, No. 17-01039-DME-CBS, 2017 WL 3088346, at *8 to *11 (D. Colo. July 20, 2017) (courts dismiss habeas petitions alleging unconstitutionally prolonged Section 1231 detention when aliens have not exhausted agency review under 8 C.F.R. § 241.13); *Wiley*, 2007 WL 496693, at *2 ("Barring a showing of something more than the Petitioner's subjective belief that any grievance would be denied, the Court is reluctant to excuse his failure to properly invoke" administrative remedies.); *Alves v. DOJ*, No. 3:25-cv-00306-KC, slip op. at 3 (W.D. Tex. Sept. 24, 2025), ECF No. 17 (deferring ruling on habeas petition alleging unconstitutionally prolonged Section 1225(b) detention where it was possible "that [the petitioner] could be released on humanitarian parole in the coming weeks").

The petitioner has not demonstrated that he is likely to succeed on the merits of his habeas application on the basis that he has been denied procedural due process.

### C. Substantive Due Process

The fact that inadmissible arriving aliens have no liberty interest in procedural due process beyond the statutory procedures afforded by Congress does not foreclose a substantive-due-process claim. *Sierra*, 258 F.3d at 1218 n.3. A noncitizen's substantive due-process rights may be violated if immigration detention becomes punitive. *See, e.g.*, *Gisbert*, 988 F.2d at 1441-42; *Banyee*, 115 F.4th at 934; *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981) ("[A]n excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive . . . due process guarantees of the Fifth Amendment."). But "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987). A restriction on liberty is punitive rather than regulatory if (a) the government intends to impose punishment, or (b) the restriction is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose. *Id.* at 747; *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).

Neither of those is true here. The petitioner provides no evidence or argument of intent to punish on the part of the government. *See Gisbert*, 988 F.3d at 1442 n.8 ("detention pending removal and stemming from exclusion proceedings is not intended as punishment"). He argues instead that his detention serves no legitimate purpose because he poses no flight risk or danger to the community, and that his detention has become punitive because it has been unreasonably prolonged. As to the first point, simply to "facilitate deportation" is a rational, nonpunitive

purpose for detention. *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

As to the second, "[w]ere there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation . . . but to incarcerate for other reasons." *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). But it

> is unlikely that a petitioner can satisfy this standard absent evidence of government wrongdoing in connection with the removal proceedings, such as actions that unreasonably prolong the removal proceeding or actions taken in bad faith. Where removal proceedings are delayed solely by a party's good faith exercise of its procedural remedies—whether by the petitioner or the government—continued detention is unlikely to trigger due process concerns in most cases because continued detention until completion of the removal proceedings still serves the purpose of the statute.

*Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp. 3d 518, 526-27 (W.D. La. 2018) (ten-month mandatory detention under Section 1226(c) without bond hearing was not so unreasonable or arbitrary as to violate due process where record did "not reflect any unusual delays considering the progress of the case" and there was "no evidence in the record that the government has acted in bad faith or otherwise unreasonably delayed [the] removal proceeding"); *accord Banyee*, 115 F.4th at 934 ("back-and-forth rulings, plus general administrative backlogs, [which] were to blame for [the petitioner's] lengthy detention" did not "turn otherwise legal detention into unconstitutional punishment").

The petitioner here has not demonstrated that there have been unreasonable delays in resolving his case in immigration court. Though his merits hearing was continued three times due to time constraints, the record does not suggest any bad faith on the part of the government. And it appears that his merits hearing has now been completed, and an order

has been issued by the Immigration Judge. *See supra* note 3. There is nothing in the record to suggest that his continued detention is not for the legitimate purpose of facilitating his deportation, and I do not find that the length of his detention has become so prolonged as to constitute punishment.[13] *See, e.g., Gisbert*, 988 at 1442 (fact and duration of aliens' continued detention for over two years did not constitute punishment); *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1197-99 (D. Colo. 2024) (twenty-one-month detention under Section 1226(c) due to "resolution of multiple appeals to the BIA" did not violate substantive due process); *Gonzalez Aguilar v. McAleenan*, No. 19-cv-0412 WJ/SMV, 2019 WL 5864821, at *11 (D.N.M. Nov. 8, 2019) (R. & R.) (petitioner not likely to succeed on substantive-due-process claim where continued detention under Section 1225(b) after twenty-seven months was not indefinite and "will end

---

[13]  I note that the petitioner's current detention is not "indefinite and potentially permanent" like that at issue in *Zadvydas*. *See Banyee*, 115 F.4th at 932; *see also Marczak*, 971 F.2d at 514 (petitioners detained under earlier version of Section 1225(b) were not "threatened with indefinite imprisonment"); *Utoliti*, 2025 WL 2418598, at *6 ("Detaining noncitizens during ongoing immigration proceedings serves a valid immigration purpose, while detaining functionally non-deportable noncitizens when there are no more immigration proceedings to be had does not necessarily do so."); *cf. Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) ("[F]or now, [the petitioner's twenty-six-month] detention [under Section 1231] is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite . . . termination point, and, thus, is more akin to detention [under Section 1226(c)] during the administrative review process, which was upheld in *Demore* . . . ."); *Rodriguez-Fernandez*, 654 F.2d at 1387, 1389 ("[E]xcludable and deportable aliens [may be detained] *while their cases are considered* . . . ."; "[D]etention is permissible *during proceedings to determine eligibility to enter* . . . ." (emphases added)). *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024) (petitioner detained under Section 1231 during pendency of withholding-only Convention Against Torture proceedings was not in same "removable-but-unremovable limbo" at issue in *Zadvydas*, and due process did not require bond hearing after 4.5-year detention).

when her removal proceedings end"), *adopted sub nom. Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202; *Rodriguez Figueroa v. Garland*, 535 F. Supp. 3d 122, 127-28 (W.D.N.Y. 2021) (over thirty-two-month detention under Section 1225(b) did not violate substantive due process); *Bonilla Espinoza*, slip op. at 23 (petitioner appeared for merits hearing "roughly 11 months after entering ICE custody," and any delays were not attributable to "arbitrary government conduct").

The petitioner has not demonstrated that he is likely to succeed on the merits of his habeas application on the basis that his detention has become punitive or unreasonably prolonged in violation of substantive due process.[14]

---

[14]  To the extent the petitioner's substantive-due-process claim is premised on a lack of adequate health care or other conditions of confinement at the detention center, he "does not establish that such a violation would justify immediate release, as opposed to injunctive relief that would leave [him] detained while ameliorating any unconstitutional conditions" at his detention facility. *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *8 (W.D. Wash. Mar. 29, 2024) (R. & R.) (quoting *Ortiz v. Barr*, No. C20-497-RSM-BAT, 2020 WL 13577427, at *7 n.8 (W.D. Wash. Apr. 10, 2020)), *adopted by* 2024 WL 2861675 (W.D. Wash. June 6, 2024); *accord Rosa v. McAleenan*, 583 F. Supp. 3d 850, 878 (S.D. Tex. 2019); *Rodas Godinez v. ICE*, No. 2:20-cv-466 KWR/SMV, 2020 WL 3402059, at *3 (D.N.M. June 19, 2020). "Unconstitutional conditions of confinement—even conditions that create a risk of serious physical injury, illness, or death—do not warrant release," and "[a] demand for release does not convert a conditions-of-confinement claim into a proper habeas request." *Enwonwu v. Joyce*, No. 6:25-CV-0232, 2025 WL 2112712, at *3 to *4 (W.D. La. May 14, 2025) (R. & R.), *habeas pet. dismissed as moot by* No. 2:25-cv-00336-SDN, slip op. (D. Me. July 28, 2025), ECF No. 31; *accord Basri v. Barr*, 469 F. Supp. 3d 1063, 1066-71 (D. Colo. 2020); *cf. Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) ("[T]he appropriate remedy [for inadequate medical treatment] would be to call for proper treatment, or to award [the inmate] damages; release from custody is not an option."); *Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990) (appropriate remedy for unconstitutional prison conditions "is to require the discontinuance of any improper practices, or to require correction of any condition causing

Because the petitioner has not shown he is likely to succeed on the merits of his claims, his motion for a preliminary injunction cannot be granted, and I need not consider the other preliminary-injunction factors. *Colorado v. EPA*, 989 F.3d 874, 890 (10th Cir. 2021) ("When the failure to satisfy one factor is dispositive, a court need not consider the other factors."); *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015) ("Because we agree with the district court that plaintiffs are unlikely to prevail on the merits, we need not address the remaining preliminary injunction factors.").

## II. Motion for Leave to File Under Pseudonym

The petitioner moves for leave to proceed under the pseudonym John Doe "based on the serious risk of retaliatory harm to himself and his family members that could result from the public disclosure of his name." Doc. 2. The respondents "do not oppose Petitioner's request to proceed without disclosing his name," but they argue that "in order to properly balance the public's interest with Petitioner's privacy concerns, the case should name Petitioner by his initials rather than John Doe." Doc. 14 at 1. The petitioner, however, asserts that "[g]iven his family's prominence, even a combination of Petitioner's initials with details of the facts of his case could easily lead to him being publicly identified, causing the Nicaraguan government to further target his family for harm." Doc. 2 at 4.

Federal Rule of Civil Procedure 10(a) requires that pleadings contain the names of the parties, and there is no rule or statute that expressly permits pseudonymous pleading. *Luo v. Wang*, 71 F.4th 1289, 1296 (10th Cir. 2023). But "[f]ederal courts traditionally have recognized that

---

cruel and unusual punishment"; "relief . . . does not include release from confinement").

in some cases the general presumption of open trials—including identification of parties and witnesses by their real names—should yield in deference to sufficiently pressing needs for a party or witness anonymity." *Id.* (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998)). A plaintiff should be permitted to proceed anonymously, though, "only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *M.M.*, 139 F.3d at 803. In determining whether anonymity is warranted, a court should weigh the movant's privacy interest against the public's interest in open proceedings, *id.* at 800, 802-03, and exercise its "informed discretion, after taking all relevant factors into consideration," *Luo*, 139 F.4th at 1296-97 (quoting *M.M.*, 139 F.3d at 803). *See also Sealed Pl. v. Sealed Def. #1*, 537 F.3d 185, 190 (2d. Cir. 2008) (listing factors to consider in balancing of interests).

The petitioner here has adequately established that his family members who remain in Nicaragua, as well as himself if he is removed, would face a real potential for harm if he proceeds under his own name or initials. *See, e.g.*, Doc. 1-1 at 6, 9; Doc. 1 at 27 & n.5. The respondents assert that allowing the petitioner to proceed under a pseudonym rather than initials "risks creating confusion for lawyers and courts because when cases proceed under a John Doe, it is difficult for lawyers and judges to identify specific cases, keep track of which is which, locate precedent, and determine whether a party has brought prior litigation." Doc. 14 at 4. But any marginal benefit to the public that might be gained by requiring the petitioner to proceed under his initials rather than as John Doe is outweighed by the risk that disclosing his initials in conjunction with the facts of his case could allow someone to identify him or his family.

And the public's interest in this case does not outweigh the petitioner's interest in anonymity for the safety of himself and his family. *Cf. Doe v. ICE*, No. 1:23-cv-00971-MLG-JMR, 2024 WL 4389461, at *2 (D.N.M. Oct. 3, 2024) (noting that "[t]he reasons Plaintiffs sought protection in the United States are discussed in their complaint," "public disclosure of that information plainly gives rise to the distinct possibility of retaliation if Plaintiffs are returned to Venezuela," and "'retaliation from a foreign government' has been recognized by several courts 'as a sufficient basis to proceed anonymously'" (collecting cases)). The public faces minimal prejudice if the petitioner proceeds under a pseudonym because the core issues and developments in the case will be publicly accessible, and the public's interest in the legal issues presented is not furthered by disclosure of his identity.

The petitioner has justified his request to proceed anonymously, and his motion will be granted.

## CONCLUSION

It is **ORDERED** that:

Petitioner John Doe's Motion for Temporary Restraining Order and Preliminary Injunction, **Doc. 5**, is **DENIED**;

For the reasons discussed above, "it appears from the [petitioner's habeas] application that [he] is not entitled" to the writ. 28 U.S.C. § 2243. Accordingly, the petitioner must **SHOW CAUSE** within **three weeks** why his petition, Doc. 1, should not be dismissed without prejudice;

Petitioner John Doe's Motion for Leave to File Under Pseudonym, **Doc. 2**, is **GRANTED**;

The Clerk of Court is **DIRECTED** to place Doc. 1-1 and Doc. 13-1 under Level 1 restriction, and the parties must file public versions of

those documents within **two weeks** that redact all references to the petitioner's A-number; and

I note that pursuant to Federal Rule of Civil Procedure 5.2(c), members of the public may have remote electronic access to the docket sheet and orders of the Court in this case, but may only access the full record at the courthouse. Members of the public may not have any access to portions of the record that are maintained under restriction. *See* Fed. R. Civ. P. 5.2(d); Local Civ. R. 7.2(a)-(b).

DATED: November 4, 2025          BY THE COURT:

Daniel D. Domenico
United States District Judge